UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re ROBERT G. WALLACE TRUST,<br><br>JANEILLE LITTON, Trustee of the ROBERT G. WALLACE TRUST,<br><br>        Plaintiff,<br><br>  v.<br><br>BENSON L. SCHAUB, Managing Trustee of the ROBERT G. and GLORIA R. WALLACE FAMILY FOUNDATION, a Qualified Charitable Remainder Unitrust; BENSON L. SCHAUB, as President, Trustee or Controlling Owner of THE AMERICAN FOUNDATION FOR CHARITABLE SUPPORT, INC.; THE INTERSTATE COMMUNITY FOUNDATION; THE USA FOUNDATION; and FOUNDATION PLANNERS OF AMERICA and ROES 1 through 10 inclusive,<br><br>        Defendants. | No.  2:14-CV-01876 JAM-KJN<br><br>**ORDER GRANTING PLAINTIFF'S MOTION TO REMAND AND DENYING AS MOOT DEFENDANT'S MOTION TO DISMISS** |

    This matter is before the Court on Plaintiff Janeille Litton's ("Plaintiff") motion to remand (Doc. #8) and Defendant

1

1  Benson L. Schaub's ("Defendant") motion to dismiss (Doc. #6)
2  Plaintiff's complaint (Doc. #1, Exh. 3) for failure to state a
3  claim pursuant to Federal Rule of Civil Procedure 12(b)(6).
4  Defendant opposes Plaintiff's motion to remand (Doc. #12).
5  Plaintiff opposes Defendant's motion to dismiss (Doc. #11).  For
6  the following reasons, Plaintiff's motion to remand is GRANTED
7  and Defendant's motion to dismiss is DENIED as moot.[1]

## I. FACTUAL ALLEGATIONS AND PROCEDURAL BACKGROUND

In 1984, Robert Wallace and his wife, Gloria Wallace ("the Wallaces"), established a charitable trust entitled the Robert G. and Gloria R. Wallace Family Foundation ("Wallace Family Foundation" or "the trust").  First Amended Complaint ("FAC") ¶ 2.  The trust named Defendant Schaub, who drafted the trust instrument, as managing trustee.  FAC ¶¶ 3, 16.  Robert Wallace was "Controlling Trustee," and retained the right to "supervise and review for his approval all decisions regarding the investments of this trust."  FAC ¶ 3.  During their lifetimes, the Wallaces often directed the trust to distribute funds to charities of their choice.  FAC ¶ 7.

One such charity was The Friendship Club.  FAC ¶ 10-12. Plaintiff is "[a]ssignee" for The Friendship Club and represents it in this action.  FAC ¶ c.  Over a decade, the Wallaces donated thousands of dollars of trust funds to The Friendship Club.  FAC ¶ 12.  Robert Wallace supplemented these donations by amending

---

[1] This motion was determined to be suitable for decision without oral argument.  E.D. Cal. L.R. 230(g).  The hearing was scheduled for October 1, 2014.

1 the trust in 2010 to name The Friendship Club as remainder
2 beneficiary and Plaintiff as trustee.  FAC ¶ 13.  Following
3 Robert Wallace's death in 2013, Plaintiff brought this suit to
4 assert The Friendship Club's rights as remainder beneficiary.
5 See FAC ¶¶ 1, 13-18.
6      Contesting these rights, Defendant asserts that any
7 amendment of the trust was invalid.  Opp. at 3.  Namely, the
8 original trust instrument designated a particular remainder
9 beneficiary – the Interstate Community Foundation (of which
10 Defendant is "President").  Id.  Under the terms of the trust,
11 that designation was effectively irrevocable.  Id.  So any
12 amendment of the remainder beneficiary would be ineffective and
13 invalid.  Opp. at 3-4.
14      Plaintiff originally filed this action in Nevada County
15 Superior Court.  See Notice of Removal, Exh. 1.  Defendant then
16 removed it to federal court.  Notice of Removal ¶ 4.  The
17 district court remanded on the grounds that the complaint did not
18 establish Plaintiff's standing under Article III.  See Notice of
19 Removal, Exh. 2; In re Robert G. Wallace Trust, 2:14-cv-00600
20 GEB-DAD (E.D. Cal. June 17, 2014).
21      Plaintiff subsequently filed an amended complaint in Nevada
22 County Superior Court and Defendant again removed, bringing the
23 case back before this Court.  The First Amended Complaint alleges
24 that Defendant misled the Wallaces about their control over the
25 trust's assets in order to induce them to sign the trust
26 instrument and that Defendant mismanaged trust funds.  FAC ¶¶ 14-
27 18, 20.  Plaintiff seeks an accounting and a declaration
28 "determining that The Friendship Club is the remainder

3

beneficiary of [the Wallace Family Foundation]." FAC ¶¶ 10-11. Plaintiff also asks this Court for an order "directing and instructing" Defendant to distribute all of the Wallace Family Foundation assets to The Friendship Club. FAC ¶ 11.

## II.  OPINION

### A.  Legal Standard for Remand

A defendant may remove a state-court action if the case could have been originally filed in federal court. Caterpillar, Inc., v. Williams, 482 U.S. 386, 392 (1987). However, a court must strictly construe the removal statute against removal jurisdiction. Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992). "Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." Id. (citing Libhart v. Santa Monica Dairy Co., 592 F.2d 1062, 1064 (9th Cir. 1979)). Any such doubt requires remand. See 28 U.S.C. § 1447(c).

### B.  Judicial Notice

In considering a motion to remand, a court may take judicial notice of facts that are not subject to reasonable dispute in that they are matters of public record, provided that they are not subject to reasonable dispute. Fed. R. Evid. 201; Knutson v. Allis-Chalmers Corp., 358 F. Supp. 2d 983, 988-89 (D. Nev. 2005).

Here, Defendant requests that the Court take judicial notice of five documents in support of its opposition to the motion to remand: (1) Plaintiff's original complaint, filed in Nevada County Superior Court on February 5, 2014;

1  (2) Defendant's memorandum of points and authorities to support
2  Defendant's first notice of removal, filed on March 11, 2014;
3  (3) Plaintiff's memorandum of points and authorities in
4  opposition to Defendant's first motion to dismiss, filed May 5,
5  2014; (4) a declaration filed with Plaintiff's May 5 memorandum;
6  and (5) the order of the federal court remanding the action,
7  filed on June 17, 2014.  All these documents are in the public
8  record.  Plaintiff has not disputed their authenticity.
9  Therefore, they are the proper subject of judicial notice.  See,
10 e.g., United States v. Wilson, 631 F.2d 118, 119 (9th Cir.
11 1980).
12      C.   Discussion
13           1.   Probate Exception
14      Plaintiff raises several arguments in support of her remand
15 motion including that this Court lacks subject matter
16 jurisdiction pursuant to the "probate exception."  Mot. at 5.
17 Plaintiff contends that this action is among the type of cases
18 excluded under the probate exception, because Defendant has
19 "removed an entire probate proceeding[.]"  Mot. at 5:5.
20 Moreover, the asserted claims are "quintessentially probate in
21 [] nature[,]" because the complaint requested "instructions with
22 regard to the internal affair of a trust, [and] to determine and
23 enforce the trustor's designation of a remainder beneficiary."
24 Mot. at 5:10-11.  Plaintiff also asserts that the court lacks
25 jurisdiction because the trust res is in the custody of the
26 probate court, and to take federal jurisdiction would
27 impermissibly interfere.  Mot. at 7 (citing Wells Fargo Bank,
28 N.A. v. Stern, 2003 WL 22114268 (N.D. Cal. Sept. 8, 2003)).

5

1    Defendant counters that this case does not fall within the
2 narrow scope of the probate exception, as clarified by the
3 Supreme Court in Marshall v. Marshall, 547 U.S. 293 (2006).
4 Opp. at 9. As to Plaintiff's argument that the state court
5 retains custody of the trust property, Defendant argues that
6 proper removal to federal court would terminate the state
7 court's jurisdiction over the property, thus obviating
8 Plaintiff's claim of interference. Opp. at 11 (citing Sexton v.
9 NDEX West, LLC, 713 F.3d 533, 537 (9th Cir. 2013)).

10   The probate exception bars federal diversity jurisdiction
11 where a party asks a court to (1) probate or annul a
12 testamentary instrument, (2) administer a decedent's estate, or
13 (3) dispose of property in the custody of the state probate
14 courts. Marshall, 547 U.S. at 311; Three Keys Ltd. v. SR
15 Utility Holding Co., 540 F.3d 220, 227 (3d Cir. 2008); Campi v.
16 Chirco Trust UDT 02-11-97, 223 F. App'x 584, 585 (9th Cir. Feb.
17 27, 2007). The Supreme Court analyzed the scope of exception in
18 2006 in Marshall. In that case, a widow brought a claim against
19 a beneficiary of her deceased husband's will for tortious
20 interference with the widow's expected gift. 547 U.S. at 304.
21 The Court reasoned that tortious interference was "a widely
22 recognized tort." Id. at 312 (citing King v. Acker, 725 S.W.2d
23 750, 754 (Tex. App. 1987); 4 Restatement (Second) of Torts §
24 774B (1979)). "Trial courts, both federal and state, often
25 address[ed] conduct of the kind [the plaintiff] allege[d]." Id.
26 Thus, there were no "'sound policy considerations' militat[ing]
27 in favor of extending the probate exception to cover" the
28 tortious interference claim, because the probate courts had no

6

1  "special proficiency in handling such issues." Id. (citation,
2  quotations, and alterations omitted).  The Court held that the
3  tortious interference claim did not involve "the probate or
4  annulment of a will" nor "the administration of an estate . . .
5  or any other purely probate matter[,]" so the probate exception
6  was inapplicable.  Id. (citation and quotation marks omitted).
7       Since Marshall, few Ninth Circuit or Supreme Court cases
8  have discussed the scope of the probate exception and there
9  appears to be no controlling authority directly on point.  In
10 the absence of such guidance, both parties cite numerous
11 seemingly conflicting district court cases.
12      Defendant relies on Freeman v. United States Bank, N.A.,
13 2013 U.S. Dist. LEXIS 69680 (M.D. Fla. 2013).  Freeman concerned
14 a dispute over the rightful owner of trust property.  Id. at *2.
15 In its one-paragraph discussion of the probate exception, the
16 Freeman court relied on language from Markham v. Allen, 326 U.S.
17 490 (1946), that stated that a federal court "may exercise
18 jurisdiction to adjudicate rights in [property in the custody of
19 a state court] where the final judgment does not undertake to
20 interfere with the state court's possession save to the extent
21 that the state court is bound by the judgment to recognize the
22 right adjudicated by the federal court." See Freeman, 2013 U.S.
23 Dist. LEXIS 69680, at *4 (alteration in original).  The Freeman
24 court then concluded that the plaintiff's claims did not
25 "challenge the validity of the will or trust[] or the validity
26 of the probate proceeding"; therefore, the claims fell outside
27 the probate exception.  Id. at *5.
28      Plaintiff first attempts to distinguish Freeman on the

7

1  basis that it was "an original diversity proceeding" rather than
2  a removal case.  See Mot. at 6:25-26.  The Court is not
3  persuaded that there is a meaningful distinction between the two
4  cases on that basis.  Indeed, there is no indication in Marshall
5  or any other controlling case that the probate exception turns
6  on whether the case was originally brought in federal court or
7  removed to it.
8      Plaintiff next argues that Freeman's claims are
9  distinguishable.  See Mot. at 6:26-27; Reply at 4:4-6.  The
10 distinction between the claims in Freeman and Plaintiff's claims
11 here is not clear, however, because the description of facts in
12 Freeman was so brief and did not fully elucidate the issues in
13 dispute, including whether the parties contested a provision of
14 the trust, as the parties do here.
15     This Court declines to follow Freeman because its
16 reasoning does not comprehensively address the first two prongs
17 of the probate exception.  In particular, the Freeman court
18 resolved the issue based almost entirely on Markham.  But the
19 Supreme Court in Marshall clarified that the quoted language
20 from Markham is "essentially a reiteration of the general
21 principle that, when one court is exercising in rem jurisdiction
22 over a res, a second court will not assume in rem jurisdiction
23 over the same res."  547 U.S. at 310-11 (citing Penn General
24 Casualty Co. v. Pennsylvania ex rel. Schnader, 294 U.S. 189,
25 195-96 (1935); Waterman v. Canal-Louisiana Bank & Trust Co., 215
26 U.S. 33, 45-46 (1909)).  The Marshall court further clarified
27 that such overlapping in rem jurisdiction is only one
28 circumstance in which the probate exception applies: it also

1  applies where a party seeks "probate or annulment of a will [or]
2  the administration of a decedent's estate[.]" Id. at 311-12.
3  The Freeman court did not analyze these additional prongs of the
4  probate exception, but simply concluded that they did not apply.
5  See 2013 U.S. Dist. LEXIS 69680, at *5 ("[A]s long as the action
6  does not challenge the validity of the will or trust, or the
7  validity of the probate proceeding, then the probate exception
8  does not apply to curtail the federal court's jurisdiction to
9  adjudicate a claim between parties.  Nothing in the case at bar
10 precludes this Court's jurisdiction in the nature of the probate
11 exception to federal jurisdiction.").

12    Other post-Marshall cases have included facts that are more
13 clearly analogous to this case as well as more comprehensive
14 interpretation of the terms "probate or annul" a testamentary
15 instrument and "administration of an estate."  One such
16 instructive case is Grey v. Johansson, 2014 WL 4259432, at *1
17 (D.N.J. Aug. 26, 2014). In Grey, the plaintiff asserted
18 ownership of a horse allegedly conferred to her by a testator's
19 will.  The defendant – the testator's widower - argued that the
20 horse had passed to him as marital property. Id. at *1, *3.
21 The plaintiff sought a declaration that the will provisions
22 regarding the horse were valid, a declaration confirming her
23 "ownership" of the horse, and an order directing the defendant
24 to pay costs and expenses. Id. at *2.

25    The Grey court interpreted Marshall's language concerning
26 probate or annulment of a will and administration of an estate,
27 stating that courts have "recognized that this prohibition
28 [described in Marshall] bars federal jurisdiction 'over any

1  claims for relief' or 'theor[ies] of recovery' that require a
2  determination concerning the validity and/or construction of a
3  testamentary document." Id. at *4 (quoting Rothberg v. Marger,
4  2013 WL 1314699, at *6 (D.N.J. Mar. 28, 2013)) (alteration in
5  original). See also Rothberg, 2013 WL 1314699, at *6-*7
6  (collecting cases). The Grey court analyzed the plaintiff's
7  requests for relief and concluded that each "directly
8  concern[ed] the construction, interpretation, and validity of
9  [the testator's] will[.]" Grey, WL 4259432, at *4 (emphasis in
10 original) (citing Three Keys Ltd., 540 F.3d at 227). In
11 particular, the first request sought a declaration that the
12 provisions concerning the horses were valid. By "expressly"
13 seeking adjudication of the will's validity, the plaintiff's
14 claim was equivalent to a request to probate or annul a will.
15 Id. Accordingly, the probate exception applied to bar
16 jurisdiction. Id.

17    The plaintiff's second prayer for relief was a declaration
18 of ownership of the horse. Id. at *1. The court reasoned that
19 this request also required a finding regarding the validity of
20 the will's provisions, because those provisions were the basis
21 of Plaintiff's supposed ownership. Id. at *4. This claim too
22 was barred. Id.

23    Finally, the plaintiff's third request asked for
24 reimbursement of expenses, but "only to the extent the Court
25 f[ound] certain provisions of [the] will invalid[.]" Id.
26 (emphasis in original). "The crux of this claim," the court
27 reasoned, "turn[ed] on the validity of [the] will[.]" Id. at
28 *5. The probate exception therefore precluded jurisdiction over

10

1 this claim.  Id.

2      As in Grey, Plaintiff here requests that the Court
3 determine the validity of a provision in a testamentary
4 instrument.  The defendants in both Grey and this case have
5 asked the court to find those same provisions invalid.  See,
6 e.g., Mot. to Dismiss at 2:8-9 ("[T]he Complaint wrongfully
7 assumes that the amendment to the Wallace Foundation to name the
8 Friendship Club as the new remainder beneficiary is valid.");
9 id. at 2:18-20 ("[A]ny amendment adding the Friendship Club as
10 remainder beneficiary is **invalid**.  Therefore, Plaintiff's
11 Complaint, which seeks an order directing Defendants to transfer
12 property to the Friendship Club as a result of the invalid
13 amendment cannot be maintained.") (emphasis in original); id. at
14 8:11-14 ("[A]ny purported amendment by Mr. Wallace to designate
15 the Friendship Club as the remainder beneficiary is invalid and
16 of no effect.").

17      Also like in Grey, each of Plaintiff's requests for relief
18 hinge on the validity of the disputed provision.  Namely,
19 Plaintiff's request for an accounting is contingent on her
20 status as trustee or "assignee" for a beneficiary – a status
21 only conferred to her by the contested remainder beneficiary
22 provision.  Her request for declaratory judgment and the order
23 directing distribution of assets similarly depend on whether The
24 Friendship Club was made remainder beneficiary pursuant to a
25 valid provision.  Defendant has not argued otherwise.  See Mot.
26 to Dismiss at 5:25-27 ("The crux of Plaintiff's Complaint is
27 that Robert Wallace amended the Wallace Foundation Trust
28 Document to name the Friendship Club as the sole remainder

1  beneficiary.").

2       Because Plaintiff's claims require this Court to determine
3  the validity of a testamentary provision, the probate exception
4  bars federal jurisdiction.  Accord Wisecarver v. Moore, 489 F.3d
5  747, 751 (6th Cir. 2007) ("These claims challenge the validity
6  of McCamy's will . . . .  These claims clearly involve the
7  probate or annulment of a will and thus are barred by the
8  probate exception."); Solow v. Berger, 2011 WL 1045098, at *2
9  (E.D. Pa. Mar. 22, 2011) (applying the probate exception because
10 "for plaintiffs to recover on any claim . . . there would have
11 to be findings that the 1996 will is invalid and that the 1994
12 will is valid, effectively requiring the Court to annul the 1996
13 will and probate the 1994 will"); Morin v. Blevins, 2007 WL
14 4557108, at *3 (E.D. Cal. Dec. 21, 2007) ("Construction of trust
15 instruments and the power to compel an accounting lie at the
16 heart of the probate court's jurisdiction over the
17 administration of trusts and constitute a portion of the core of
18 the court's authority to administer trusts.  It is precisely
19 these powers Plaintiff asks this court to envoke [sic].  The
20 judicial assistance Plaintiff seeks lies squarely within the
21 confines of estate administration . . . ."); cf. Balestra v.
22 Balestra-Leigh, 2010 WL 2836400, at *4 (D. Nev. July 15, 2010)
23 (declining jurisdiction because a "determination of heirship and
24 rights in distribution of an estate is clearly at the core of
25 the probate court's functions"); Vanderburg v. Vanderberg, 2007
26 WL 1342091, at *1 (N.D. Tex. May 1, 2007) (concluding that
27 determination of heirship is "clearly within the province of the
28 probate court").  Therefore, this Court lacks subject matter

1  jurisdiction and must remand.  Gaus, 980 F.2d at 566.
2      Given that the probate exception bars Plaintiff's claims on
3  the basis that the relief requested would require the Court to
4  probate or annul a testamentary instrument, the Court need not
5  reach the other issues raised in Plaintiff's remand motion
6  including whether the second removal was timely or whether
7  exercising jurisdiction would also dispose of property in the
8  custody of the state court.

## III.   ORDER

For the reasons set forth above, the Court GRANTS Plaintiff's motion to remand.  Consistent with this Order, Defendant's motion to dismiss is DENIED as moot.

IT IS SO ORDERED.

Dated: October 22, 2014

_____
JOHN A. MENDEZ,
UNITED STATES DISTRICT JUDGE